## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL MORGAN and<br>LAURIE MORGAN, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| vs. | )<br>) | Case No.    4:12CV1379 |
| ORTHOPAEDIC ASSOCIATES OF<br>SOUTHEAST MISSOURI P.C.,<br>Serve: Registered Agent<br>     Mr. Michael C. Trueblood<br>     48 Doctors Park<br>     Cape Girardeau, MO 63703 | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| and | )<br>) | |
| BERNARD C. BURNS, D.O.,<br>Serve: 194 Scenic View Lane<br>     Cape Girardeau, MO 63701 | )<br>)<br>)<br>) | |
| Defendants. | ) | |

## COMPLAINT

### COUNT I - MEDICAL MALPRACTICE

COMES NOW Plaintiff Michael Morgan and for his cause of action against Defendants Orthopaedic Associates of Southeast Missouri, P.C., and Bernard C. Burns, D.O., states as follows:

### PARTIES/JURISDICTION

1. Plaintiffs Michael Morgan and Laurie Morgan are, and at all relevant times were, citizens of the State of Illinois. In March of 2009, Plaintiff Michael Morgan entered into a physician/patient relationship with Defendants Orthopaedic Associates of Southeast Missouri, P.C., and Bernard C. Burns, D.O.

2. Defendant Orthopaedic Associates of Southeast Missouri, P.C. is a Missouri corporation in good standing engaged in providing healthcare services to patients in the State of Missouri and at all times relevant hereto stood in a healthcare provider-patient relationship with Michael Morgan by and through its agents, servants and employees, including but not limited to Defendant Bernard C. Burns, D.O.  Defendant Orthopaedic Associates of Southeast Missouri, P.C.'s principal place of business is located in the State of Missouri at 48 Doctors Park, Cape Girardeau, Missouri  63703.  At all relevant times, Defendant Orthopaedic Associates of Southeast Missouri, P.C., was the principal and agent of Defendant Bernard C. Burns, D.O.

3. Defendant Bernard C. Burns, D.O. is a citizen of the State of Missouri. Defendant Burns is an osteopathic doctor and at all relevant times stood in a physician-patient relationship with Michael Morgan.  At all relevant times, Defendant Burns was the agent, servant and employee of Defendant Orthopaedic Associates of Southeast Missouri, P.C.

4. This Court has jurisdiction pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties, and Plaintiffs allege an amount in controversy in excess of seventy five thousand dollars ($75,000), exclusive of interest and costs.

**FACTS**

5. On March 6, 2009, Michael Morgan underwent fusion surgery at St. Francis Medical Center ("St. Francis") in Cape Girardeau, Missouri.  On March 11, 2009, Mr. Morgan was discharged from the surgical care department at St. Francis to the Rehabilitation Department at St. Francis at which time the physician/patient relationship between Defendant Burns and Michael Morgan began.

6. On March 16, 2009, at 8:30 a.m., Nurse Shelly Miller wrote in Mr. Morgan's medical chart that Mr. Morgan's "[d]ressing noted to have drainage and was actively draining

small amount when incision assessed." Nurse Miller was concerned that the wound was infected. The wound was also beginning to separate and yellow drainage was coming out. Nurse Miller's findings of separation, drainage and redness concerned her for a possible post-op infection in the incision. Defendant Burns has admitted that drainage 10 days after surgery can be indicative of a post-op infection. At 9:00 a.m., Nurse Karen Karalunas made a progress note stating "Scant drainage with darkened slough tissue present in the upper half of the incision." Darkened slough tissue means that it is black and blue, that the incision looked as if it did not have good blood flow, and that it was not going to heal correctly. The slough was necrotic which can be a sign of infection. The wound looked like it was getting worse. At 2:26 p.m., Nurse Miller noted: "Yellow drainage to surgical wound and red noted along incision line and staples noted by nurses." Nurse Miller added "risk of infection" into the Care Plan at that time because of the changes in the incision's appearance.

       7.      On March 17, 2009, at 8:00 a.m., Defendant Burns ordered a Gram stain and wound culture of the wound. A "culture" is a procedure where a health care provider takes fluid or tissue from a wound which is sent to a laboratory for testing to determine if a wound is infected. A Gram stain test is considered only a preliminary test. At 8:10 a.m. a progress note by Nurse Tina Kisner in the Rehabilitaion Department stated "yellowish drainage – necrotic areas noted 2-3 areas on incision line…Plan per Dr. Burns …Culture Wound". Defendant Burns has admitted that these symptoms could be indicative of a post-op infection and that he looked at the incision on March 17, 2009. At 8:20 a.m., the Rehabilitation Team at St. Francis had a meeting to assess Mr. Morgan's case. Defendant Burns was present and made a note in the chart to "√ culture." Nurse Eddie Wagoner was present at the Rehabilitation Team staff meeting, and he has stated that the Team was going to continue to keep Mr. Morgan in the rehab program on

March 17, 2009. At 9:50 a.m., the fluid draining from Mr. Morgan's wound was collected. Defendant Burns discharged Mr. Morgan on March 17, 2009, from the Rehabilitation Department unit, and at 12:39 p.m., Mr. Morgan was physically discharged from St. Francis. Mr. Morgan's incision was infected at the time he was discharged, but no antibiotics were prescribed for Mr. Morgan by Defendant Burns.

8. On March 18, 2009, at 9:05 a.m., the Preliminary Laboratory report was issued by the St. Francis Lab showing light growth of Enterococcus bacteria and light to moderate growth of Gram negative rod bacteria. Defendant Burns has admitted that it is reasonable that a doctor should be aware of culture results as soon as they are available, and Defendant Burns has admitted that "perhaps" he should have known of the preliminary lab results on March 18, 2009, when the lab report was issued. However, Dr. Burns did nothing whatsoever to find out what the lab results were for the wound culture he ordered.

9. On March 19, 2009, in the afternoon, Visiting Nurse Association ("VNA") Home Health Nurse Cheryl Tubbs went to the Morgan home. Nurse Tubbs found that Mr. Morgan had back pain that was 4 and 6 out of a 10 pain scale, his skin temperature was "hot," he had a temperature of 100.1 and that the incision was "red hot yellow slough around top of incision". Nurse Tubbs has stated that the slough was on the top half of the incision and was yellow, slimy, odorous tissue and that the drainage was yellow. Defendant Burns has admitted that "[R]ed hot yellow slough" is worrisome for infection. Based on the red, hot, yellow slough around the incision and his temperature, Nurse Tubbs concluded that Mr. Morgan had an infection.

10. On March 20, 2009, in the afternoon, VNA Nurse Stephanie Lovan went to the Morgan home. Mr. Morgan's temperature was 101 and his pulse was 128, which is abnormal. His respiration rate was also abnormal at 24. Nurse Lovan noted that Mr. Morgan was running

4

an elevated temperature and had an elevated pulse and that Mr. Morgan should go back to hospital. Nurse Lovan also noted that "when patient gets up, he gets clammy and starts sweating profusely." Laurie Morgan took Michael Morgan back to St. Francis Hospital due to tremors, fever, chills, and sweats, and Mr. Morgan was admitted to St. Francis emergently. When Mr. Morgan was admitted to St. Francis on March 20, 2009, new blood cultures grew Klebsiella pneumonia. The diagnosis of postoperative lumbar wound infection with sepsis was made by Charles LaValle III, M.D.

11. On March 21, 2009, Mr. Morgan returned to surgery at St. Francis for the lumbar wound infection where he underwent incision and drainage with debridement of lumbar wound infection. At the time of the March 21, 2009 surgery, purulent fluid was seen and sent for anaerobic and aerobic cultures. The culture of this intraoperative fluid grew the same Klebsiella pneumonia and Enterococcus bacteria species that grew from the March 17, 2009 culture. Mr. Morgan was treated for his postoperative surgical infection and sepsis and had MRI findings at the L1 vertebral body level consistent with osteomyelitis. A white blood cell tagged bone scan confirmed evidence of osteomyelitis involved in the lower thoracic spine and lumbar spine.

12. On April 13, 2009, Mr. Morgan was transferred to inpatient rehabilitation for further strengthening. In rehab, Mr. Morgan continued to have bilateral lower extremity numbness and right lower extremity weakness. He continued to have drainage from the surgical incision. Because of a lack of improvement with persistent drainage, fevers, pain, and weakness, Mr. Morgan was transferred to Barnes-Jewish Hospital on April 15, 2009, for further evaluation. On admission, Mr. Morgan was found to have a nondisplaced fracture of the body of L2 extending posteriorly into the pedicles.

13.     The discharge summary from Barnes-Jewish Hospital on April 25, 2009, reflects the principal and secondary diagnosis as "(1) Postoperative wound infection and intraspinal abscess. (2) Deep venous thrombosis. (3) Skin rash." The history reflects the fact that as a result of his infection and sepsis, Mr. Morgan had acute renal failure and hypotension.  A central catheter line was inserted for long term intravenous access, and he was also treated for evidence of DVT and pulmonary embolus.

14.     Dr. Kurt Martin evaluated Mr. Morgan on October 12, 2009, where he found that Mr. Morgan suffered from osteomyelitis of the vertebral bodies after surgical intervention with persistent paresthesias of both lower extremities from scar tissue as a result of the infection and surgical intervention.  Mr. Morgan was found to have significant pain in his back requiring the use of narcotics and that he had qualified for disability "because of this terrible back pain with secondary infection."

**NEGLIGENCE**

15.     At all relevant times, Defendants, as doctors and licensed healthcare providers, by and through their agents, staff and employees, owed Michael Morgan the duty to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of the Defendants/health care providers' profession.  Qualified medical doctors have reviewed Mr. Morgan's medical records and are prepared to testify that Defendant Bernard C. Burns, D.O., was negligent and failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of the Defendant's profession by:

(a)     Failing to diagnose and treat Michael Morgan's acute postoperative surgical wound infection on March 17, 2009;

(b)     Failing to keep Michael Morgan hospitalized on March 17, 2009, and beginning generalized antimicrobial intravenous treatment, with close observation and inspection of a draining postoperative surgical wound;

(c) Ordering discharge of Michael Morgan on March 17, 2009, in the presence of a draining postoperative spinal wound incision with a potential for serious infection; and

(d) Failing to check on the results of the wound drainage culture to determine if it showed an infection.

16. Defendant Orthopaedic Associates of Southeast Missouri, P.C., was negligent and failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by a corporate health care provider in that it did not have a policy, protocol or practice guideline in place to be sure that test results were obtained for the tests ordered by its employee doctors for its patients.

## CAUSATION/DAMAGES

17. As a direct and proximate result of Defendant Orthopaedic Associates of Southeast Missouri, P.C., and Defendant Bernard C. Burns, D.O.'s negligence as set forth above, Plaintiff Michael Morgan suffered the following injuries and damages:

(a) Delay in diagnosis of an acute postoperative lumbar surgical wound infection;

(b) Delay in treatment for the postoperative lumbar surgical wound infection;

(c) Sepsis;

(d) Superinfection with methicillin-resistant staphylococcus aureus (MRSA);

(e) Acute renal failure;

(f) Deep vein thrombosis;

(g) Pulmonary embolism;

(h) Vertebral osteomyelitis;

(i) Spinal cord injury affecting both lower extremities;

(j) Pathologic fracture L2 vertebral body and pedicle as a result of weakening of the bone from osteomyelitis in the area of the posterior instrumentation and pedicle screws;

(k) Need for lifetime suppressive antibiotics;

(l) Severe chronic pain in his lumbar spine and both lower extremities;

(m) Severe ambulatory dysfunction and the need for a motorized scooter for mobility;

(n) Past medical expenses in excess of $250,000;

(o) Future medical expenses with a present value of between $716,000 and $1.165 million; and

(p) Prior to coming under the care of Bernard Burns, D.O., Mr. Morgan was employed on a full time basis for General Cable Corporation preparing reels of low, medium and high voltage electrical transmission cable for quality control testing. As a result of the improper and negligent medical attention of Bernard Burns, D.O., Mr. Morgan is permanently disabled and has lost his job with lost income and benefits in the past and future with a present value of $460,740.00.

WHEREFORE, Plaintiff Michael Morgan prays judgment against Defendants Orthopaedic Associates of Southeast Missouri, P.C., and Bernard C. Burns, D.O. jointly and severally, in excess of $75,000.00, exclusive of interest and costs and for such other and further relief as the Court deems just and proper, the premises considered.

## COUNT II– LOSS OF CONSORTIUM

COMES NOW Plaintiff Laurie Morgan, and for her cause of action against Defendants Orthopaedic Associates of Southeast Missouri, P.C., and Bernard C. Burns, D.O., states as follows:

18.     Plaintiff Laurie Morgan herewith adopts by reference each and every allegation contained in paragraphs 1 through 17 of this Complaint the same as if fully herein set forth.

19.     Plaintiff Laurie Morgan is the lawful wife of Plaintiff Michael Morgan, and therefore is and was entitled under Missouri law to the healthy society, companionship, support, and consortium of Plaintiff Michael Morgan.

20.     As a direct and proximate result of Defendants' negligence as set forth above, and the injuries to her husband, Michael Morgan, Plaintiff Laurie Morgan has lost the healthy society, companionship, support, and consortium of Michael Morgan, all to Plaintiff Laurie Morgan's damage.

WHEREFORE, Plaintiff Laurie Morgan prays judgment against Defendants Orthopaedic Associates of Southeast Missouri, P.C., and Bernard C. Burns, D.O. jointly and severally in an amount in excess of $75,000, exclusive of interest and costs, and for such other and further relief as the Court deems just and proper, the premises considered.

DOWD & DOWD, P.C.

BY:   /s/ Douglas P. Dowd
DOUGLAS P. DOWD (29240MO)
LAURA G. LUMAGHI (50816MO)
Attorneys for Plaintiffs
211 North Broadway, Suite 4050
St. Louis, Missouri   63102
Telephone: (314) 621-2500
Fax: (314) 621-2503
doug@dowdlaw.net
laura@dowdlaw.net